IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

ROY WAKE

    Plaintiff,

v.

SSC GREELEY CENTENNIAL OPERATING COMPANY, LLC, a Delaware Limited Liability Company; and SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC, a Delaware Limited Liability Company.

    Defendants.

---

**COMPLAINT, JURY DEMAND
AND CERTIFICATE OF REVIEW**

---

COMES NOW the Plaintiff, Roy Wake, and for his Complaint, Jury Demand and Certificate of Review against Defendants SSC GREELEY CENTENNIAL OPERATING COMPANY, LLC, a Delaware Limited Liability Company; and SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC, a Delaware Limited Liability Company, states and avers as follows:

## I.   PARTIES AND VENUE

1. Plaintiff Roy Wake is the heir at law of Helen Margaret Wake and a Colorado resident, who currently lives at at 4217 E. Vine Drive, Fort Collins, Colorado 80524.

2. Defendant SSC Greeley Centennial Operating Company, LLC is the license holder of Centennial Health Care Center ("Centennial"), a skilled nursing facility located in Weld County, Colorado. Defendant SSC Greeley Centennial Operating Company, LLC is a Delaware Limited Liability Company. Defendant SSC Greeley Centennial Operating Company's prinicipal office is at 1500 Ravinia Drive, Atlanta, Georgia. Defendant SSC Greeley Centennial Operating Company, LLC is owned by Murray Forman, a resident of New Jersey, and Leonard Grunstein, a resident of New York.

3. Defendant SavaSeniorCare Administrative Services, LLC is a Delaware Limited Liability Company. Defendant SavaSeniorCare Administrative Services, LLC at all times relevant provided management, supervisory and oversight services for Centennial. These services included the provision of human resources; creation and approval of Centennial's staffing and operations budget; provision of Centennial's governing body; direct supervision of Centennial's administrator; creation and enforcement of Centennial's nursing policies and procedures; supervision of Centennial's compliance with all State and Federal regulatory requirements; and the responses to regulatory deficiencies cited by State and Federal authorities. Defendant SavaSeniorCare Administrative Services, LLC provided all

management and operational support for Centennial at times relevant to this Complaint.

4. Upon information and belief, both of the Defendants are entities owned and controlled by Murray Forman and Leonard Grunstein, individual real estate investors from New York.

5. The District of Colorado has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is a diversity of citizenship between the Plaintiff and Defendants. There is a complete diversity of citizenship between the Plaintiff and all of the Defendants pursuant to 28 U.S.C. § 1332(a). The Court also has jurisdiction pursuant to 28 U.S.C. § 2201.

6. Venue is proper in the District of Colorado because the acts and omissions giving rise to the claims set forth herein occurred within Colorado.

7. Defendant SSC Greeley Centennial Operating Company, LLC employed persons within the State of Colorado at times relevant to this Complaint.

8. Defendant SavaSeniorCare Administrative Services, LLC employed persons within the State of Colorado at times relevant to this Complaint.

## II.  STATEMENT OF FACTS

9. Plaintiff incorporates the foregoing paragraphs as if the same were fully set forth verbatim herein.

10. Helen Margaret Wake, who was 89 years old, was a resident of Centennial during times relevant.  Mrs. Wake was totally dependent on her caregivers for movement, transfers and care. Mrs. Wake weighed 246 pounds and was at high risk for falling.  Defendants accepted Mrs. Wake as a resident and were aware of her medical conditions and care needs at all times relevant.

11.  Plaintiff visited his mother two to three times a week during her stay at Centennial.

12.  On or about October 11, 2009, Centennial staff attempted to transfer Mrs. Wake using only one staff member and using the wrong mechanical lift. The lift itself was also defective.  At all times relevant, Mrs. Wake was required to be transferred with two staff members using a larger capacity lift.

13.  Defendants and their staff member knew that it was negligent to attempt to transfer Mrs. Wake using the wrong, defective lift while assisted by only staff member.  This conduct also directly violated Defendants' own policies and procedures, which the staff member had just been trained in four days earlier.

14. As a result of using the wrong, defective lift and only one aide, Mrs. Wake foreseeably fell during this attempted transfer.

15. In an internal investigation, Defendants concluded that Mrs. Wake's fall was caused by the staff member's failure to follow Centennial's policies and procedures by:

> failing to request assistance from another staff member, failing to use the correct mechanical lift and failing to ensure the sling straps were placed correctly and securely on the sling bar.

16. The Centennial staff member who negligently transferred Mrs. Wake was terminated. A maintenance employee was also terminated for failing to repair a known defect on the lift used during the transfer.

17. Defendants determined that the fact that the staff member had been trained on using the lift just four days earlier was an aggravating factor.

18. As a direct and proximate result of this fall, Mrs. Wake broke her left femur, shattered her right hip, sustained multiple fractured ribs and also sustained an approximate five-inch gash on the top of her head that required seven staples.

19. The day following this fall, on October 12, 2009, Mrs. Wake died from her catastrophic resulting injuries and trauma. This preventable death was from non-natural and negligent causes, and entirely proximately caused by the gross negligence of Mrs. Wake's Centennial caregivers.

20. Despite regulatory requirements, Defendants did not notify the Colorado Department of Public Health and Environment ("CDPHE") that Mrs. Wake was seriously injured and also died as a result of this serious occurrence at their facility.

21. Centennial has a poor regulatory history with the CDPHE. For example, and not by way of limitation, during the period 7/15/2006 – 2/14/2008, Centennial was cited with 32 deficiencies. Eleven of these deficiencies were pattern deficiencies. Three of these deficiencies were Level G (actual harm) deficiencies. These Level G deficiencies include failure to provide medically related social services; failure to ensure that residents who enter the facility without pressure sores do not develop them in the facility; and failure to provide adequate supervision and assistance devices to prevent accidents. CDPHE found that seven residents were directly harmed by these deficient practices. On April 16, 2009, this facility was cited by CDPHE with numerous additional care deficiencies, including those regarding accidents and supervision involving several residents.

22. In an effort to evade liability as to Roy Wake, Mrs. Wake's known son and heir at law, Defendants acted to try to settle Mr. Wake's wrongful death claims through his other siblings.

23. In particular, Defendants were aware of Plaintiff's grief, upset and

anguish over his mother's wrongful death. Despite this knowledge, Defendants sought and obtained a settlement from Plaintiff's siblings, who were not represented by counsel, for his mother's death, without his participation and knowing that he did not agree with the offer made by Defendants or the settlement they reached with his siblings.

24. Defendants consciously and intentionally attempted to preclude Plaintiff from bringing a wrongful death claim by engaging in this wrongful conduct.

25. Defendants' payment of monies to Plaintiff's siblings does not act as consideration for the release of Plaintiff's claims brought here. Plaintiff received no portion of the minimal monies Defendants paid to his siblings, did not sign a release of his claims and did not consent to settlement of any wrongful death claims.

26. Defendants were specifically made aware of Plaintiff's refusal to settle his claims and were specifically made aware of Plaintiff's objection to any such settlement.

27. In fact, Plaintiff notified Defendants in writing that he objected to any settlement until he had the opportunity to consult attorneys. He specifically stated:

> "I will be contacting attorneys considering this situation and will not be signing any papers until I see justice done and administered."

**See Exhibit 1.**

28. Defendants consciously avoided involving Plaintiff in settlement discussions because they knew and understood that he would have an attorney review any proposed settlement, while Plaintiff's siblings were known to be unrepresented.

29. Defendants thus attempted to subvert Plaintiff's legal rights as an heir at law to bring and be involved in a wrongful death claim by dealing exclusively with his unrepresented siblings.

30. Defendants never made any contact with Roy Wake with regard to his letter.

31. In addition, on information and belief, no person, including any sibling of Plaintiff, was authorized to act in any way as personal representative or other agency with power and authority to affect, release, settle, compromise, nullify, eliminate or void Plaintiff's individual personal statutory rights to pursue a wrongful death or other claims against Defendants.

32. Plaintiff's siblings did not file a lawsuit or claim for wrongful death in any Court of competent jurisdiction.

## III.  FIRST CLAIM FOR RELIEF:

## Wrongful Death As A Result of Nursing Home Negligence

33. Plaintiff hereby incorporates all the preceding paragraphs, as if each were fully set forth herein.

34. Defendants owed Mrs. Wake, and thus by extension Plaintiff, a duty of due care, which included:

> A. A duty to develop and implement timely and consistent care plans;
>
> B. A duty to assess and reassess accident prevention plans;
>
> C. A duty to follow their policies and procedures;
>
> D. A duty to maintain and provide properly functioning equipment;
>
> E. A duty to provide sufficient supervision to prevent accidents;
>
> F. A duty to provide appropriate care needs, including nutrition and hydration;
>
> G. A duty to provide sufficient staff and staff training; and
>
> H. A duty to follow all State and Federal regulations governing the operation of skilled nursing facilities.

35. Defendants breached these duties of due care by engaging in the acts and omissions set forth herein and by:

   A. Failing to develop and implement timely and consistent care plans;

   B. Failing to properly assess and reassess accident prevention plans;

   C. Failing to follow internal policies for use of lifts, including proper staffing for such uses;

   D. Failing to provide proper equipment and supervision to prevent accidents;

   E. Failing to properly assess and timely secure appropriate basic care needs, including nutrition and hydration;

   F. Failing to ensure that the facility could meet the overall needs of Mrs. Wake;

   G. Failing to assure her highest practicable level of functioning;

   H. Failing to provide sufficient staff and sufficiently trained staff to meet Mrs. Wake's known safety needs;

   I. Failing to adequately document Mrs. Wake's condition and care; and

J. Failing to provide care and services in accordance with State and Federal regulations.

36. The negligent acts and omissions by Defendants were a substantial and significant contributing proximate cause in the avoidable and untimely death of Mrs. Wake.

37. Had Defendants, through their agents and employees, not committed the many negligent acts and omissions outlined herein, Mrs. Wake would not have died how or when she did.

38. As a result, Plaintiff has suffered damages, losses and injuries in an amount to be determined by the jury at trial. These damages include, *inter alia*, pain and suffering, upset, grief, loss of society and companionship, anger, depression, and all other purely non-economic damages as allowed under the Colorado Wrongful Death Act.

39. Given the circumstances of fraud, malice and willful and wanton conduct surrounding this wrongful death claim, Plaintiff hereby gives notice that he anticipates seeking leave to amend the Complaint to seek punitive damages, as appropriate under Colorado law.

## IV. SECOND CLAIM FOR RELIEF:

### Declaratory Judgment

40. Plaintiff hereby incorporates all the preceding paragraphs, as if each were fully set forth herein.

41. Pursuant to the F.R.C.P. Rule 57 and the Federal Declaratory Judgment Act, the Court is asked to determine the rights and status of the parties with respect to the legal issues between them identified in this claim for relief.

42. The Court is asked to declare, if appropriate at the time of the jury verdict, that the claims brought herein are not capped by the Health Care Availability Act ("HCAA") because Defendants did not have HCAA conforming insurance at times relevant. HCAA conforming insurance is the quid pro quo for damages caps under the HCAA.

43. The Court is asked to further declare under F.R.C.P. 57 that any arbitration agreement that was obtained by Defendants in violation of Colorado law governing such agreements, the HCAA, unconscionability principles and substantive due process is unenforceable, null and void.

44. The Court is further asked to find and declare under F.R.C.P. 57 that the purported settlement agreeement as between Defendants and Plaintiff's siblings is null and void as to Plaintiff and has no bearing on his rights to proceed herein against Defendants for his mother's wrongful death because:

    a. He was not a party to it;

b. He specifically notified Defendants in writing that he was a claimant, not willing to settle at that time, and that he did not consent to any settlement of his claims through anyone else;

c. He has not knowingly or voluntarily released, settled, waived, extinguished or compromised his rights as a surviving child under the Wrongful Death Act;

d. No consideration was paid to him by Defendants;

f. No action for wrongful death has been filed prior to this suit; and

h. Defendants' actions were accompanied by unclean hands, circumstances of fraud, predatory conduct, undue pressure, inequitable conduct and/or procedural and substantive unconscionability with respect to this plaintiff precluding any attempt to enforce any settlement agreement with his siblings and others as to him.

## V. CERTIFICATE OF REVIEW

Undersigned counsel hereby certifies that an expert in the field of long term care and in the field of internal medicine has reviewed this matter and that said expert has reviewed all facts, records and materials deemed relevant by said expert. Based upon this review, the expert has determined that Plaintiffs'

claims are not frivolous, groundless or lacking in substantial merit within the meaning of C.R.S. Section 13-17-102(4).

Said expert's review satisfies the requirements of C.R.S. Section 13-20-602.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against the Defendants, in an amount to be determined by a jury following a trial, and award the following damages:

A. Non-economic damages under the Wrongful Death Statute;

B. Pre and post judgment interest and pre-filing interest;

C. Declaratory relief pursuant to F.R.C.P. 57 and the Federal Declaratory Judgment Act as requested herein regarding the purported settlement, regarding caps and regarding any purported arbitration agreement;

D. Case costs;

E. Any other relief at law or equity that the Court deems necessary, proper or just under the circumstances.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted this October 7, 2011,

[Filed Electronically, Original Signatures on file in Counsel's Office]

<u>/s/ Jerome M. Reinan</u>

Law Offices of J. M. Reinan, P.C.
Jerome M. Reinan
Jordana Griff Gingrass
1437 High Street
Denver, CO 80218

<u>/s/ John R. Holland</u>

Law Offices of John R. Holland, P.C.
John R. Holland
Anna Holland-Edwards
Erica T. Grossman
1437 High Street
Denver, CO 80218

<u>Plaintiff Address:</u>

4217 E. Vine Drive, Fort Collins, Colorado 80524.