## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge William J. Martínez

Civil Action No. 11-cv-02630-WJM-MEH

ROY WAKE,

      Plaintiff,

v.

SSC GREELEY CENTENNIAL OPERATING COMPANY, LLC, a Delaware limited
liability company, and
SAVASENIORCARE ADMINISTRATIVE SERVICES, LLC, a Delaware limited liability
company

      Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION FOR
## PARTIAL SUMMARY JUDGMENT

---

      Plaintiff Roy Wake ("Plaintiff") brings this action against Defendants SSC

Greeley Centennial Operating Company, LLC and SavaSeniorCare Administrative

Services, LLC (jointly "Defendants"), alleging they are liable for the wrongful death of

Plaintiff's mother.  (ECF No. 60.)  The Court has subject matter jurisdiction over this

action based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.  This matter is

before the Court on Defendants' Motion for Partial Summary Judgment on Plaintiff's

Request for Punitive Damages ("Motion").  (ECF No. 74.)  For the following reasons,

Defendants' Motion is denied.

## I.  BACKGROUND

      Unless otherwise noted, the following facts are not in dispute.  At all relevant

times, Plaintiff's late mother, Helen Wake, was a resident of Centennial Healthcare

Center, a d/b/a of Defendant SSC Greeley Centennial Operating Company, LLC ("Centennial").  (ECF Nos. 74-2, 74-3, 75-8.)  On October 11, 2009, when a Certified Nurse Assistant ("CNA") attempted to use a mechanical lift equipped with a sling to move Mrs. Wake from her bed to her wheelchair, the sling straps slid off of the support bar, and Mrs. Wake dropped to the floor.  (*Id.*)  Mrs. Wake suffered serious injuries as a result of her fall, and was transferred to the hospital, where she died the following day. (*Id.*)

Centennial conducted an immediate investigation into the incident, which was documented in an Incident/Accident Report form dated October 11, 2009 and an Incident Investigation dated October 12, 2009 (jointly "Incident Report").  (*See id.*)  The Incident Report was subsequently signed on October 14, 2009 by Brenda Black, then the Nursing Home Administrator at the Centennial facility.  (*Id.*; *see also* Deposition of Brenda Black ("Black Dep.") (ECF Nos. 74-4, 75-5, 76-2) at 49.)  The Incident Report identified several causes that contributed to the incident, including the CNA's failure to follow Centennial's policy and request a second person to assist with use of the lift, the CNA's failure to use the correct lift, the CNA's failure to ensure the correct use of the lift, and the "Maintenance Director's failure to install the correct safety clip on the sling bar."  (ECF No. 74-3 at 2.)  As part of the investigation, an employee reported that the lift in question was fully functional other than a missing safety clip, which was found under the bed in Mrs. Wake's room after the incident, "[b]end (sic) and out of shape." (*Id.* at 5.)

At the time of the incident, Robert Castillo was employed as the Maintenance Supervisor for Centennial's facility.  (Deposition of Robert Castillo ("Castillo Dep.") (ECF

2

Nos. 74-6, 75-4, 76-3) at 58-59.)  On October 10, 2009, Mr. Castillo received

disciplinary action related to the incident, documented in a Disciplinary Action Record

signed by him and Ms. Black.  (ECF No. 75-7.)  The Disciplinary Action Record stated

that the reason for the discipline was Mr. Castillo's "failure to timely assess and address

a safety issue with a mechanical lift [which] contributed to a serious injury involving a

resident on 10/11/09."  (*Id.*)

On October 7, 2011, Plaintiff filed this action alleging Defendants were

responsible for Mrs. Wake's wrongful death.  (ECF No. 1.)  Plaintiff's Complaint seeks

damages and a declaration that separate settlements reached between Defendants

and Plaintiff's siblings have no effect on Plaintiff's claims.  (*Id.*)  On December 18, 2012,

Plaintiff filed an Amended Complaint adding a claim for exemplary damages.[1]  (ECF

No. 60 at 11.)

On March 25, 2013, Defendants filed the instant Motion seeking summary

judgment on Plaintiff's exemplary damages claim.  (ECF No. 74.)  Plaintiff filed his

Response on April 8, 2013 (ECF No. 75), and Defendants filed their Reply on April 12,

2013 (ECF No. 76).  In July 2013, with leave of Court, Defendants and Plaintiff each

supplemented their arguments with citations to additional authority.  (ECF Nos. 90-93.)

---

[1] In accordance with Colorado law, Plaintiff did not bring a claim for exemplary damages
in his original complaint.  *See* Colo. Rev. Stat. § 13-21-203(3)(c)(I) ("A claim for exemplary
damages in an action governed by this section may not be included in any initial claim for
relief.").  Instead, on October 19, 2012, after some discovery, Plaintiff filed a motion for leave to
amend his complaint to add a claim for exemplary damages, along with supporting exhibits.
(ECF No. 44.)  After Defendants' response and Plaintiff's reply, Magistrate Judge Michael E.
Hegarty granted Plaintiff's motion to amend, concluding that Plaintiff had established the
requisite *prima facie* proof of a triable issue of exemplary damages.  (ECF No. 58.)

## II.  LEGAL STANDARD

While Colorado law governs the substantive underlying claims in this action, federal law governs the Court's standard for summary judgment.  *See Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007) ("In diversity cases, the laws of the forum state govern our analysis of the underlying claims, but [federal courts] are governed by federal law in determining the propriety of . . . summary judgment.") (internal quotation marks omitted); *see also Klein v. Grynberg*, 44 F.3d 1497, 1503 (10th Cir. 1995) ("In a diversity case, whether punitive damages are warranted is a matter of state law.").

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party.  *Id.*; *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).  Courts must also view the evidence "through the prism of the substantive evidentiary burden."[2] *Anderson*, 477 U.S. at 254; *see also Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1127-29 (10th Cir. 2009).

## III.  ANALYSIS

Defendants' Motion raises three arguments that summary judgment is warranted

---

[2] As discussed below, under Colorado law Plaintiff must show his entitlement to an award of exemplary damages beyond a reasonable doubt.

on Plaintiff's exemplary damages claim:  (1) there is no evidence that Castillo engaged

in willful and wanton conduct resulting in Mrs. Wake's death; (2) even if Castillo was

willful and wanton, he was not a managerial employee such that Defendants could be

liable for his conduct; and (3) SavaSeniorCare Administrative Services cannot be liable

for Castillo's conduct because only Centennial employed him.  (ECF No. 74 at 10-20.)

The Court will discuss each argument in turn.

## A.      Willful and Wanton Conduct

Under Colorado's Wrongful Death Act, which forms the basis for Plaintiff's

lawsuit, where "the death complained of is attended by circumstances of fraud, malice,

or willful and wanton conduct, the trier of fact, in addition to the actual damages, may

award reasonable exemplary damages."  Colo. Rev. Stat. § 13-21-203(3)(a).  The

alleged conduct here refers to circumstances of "willful and wanton conduct," as Plaintiff

has not alleged that Mr. Castillo's conduct exhibited fraud or malice.[3]

"'Willful and wanton conduct' means conduct purposefully committed which the

actor must have realized as dangerous, done heedlessly and recklessly, without regard

to consequences, or of the rights and safety of others, particularly the plaintiff."  Colo.

Rev. Stat. §§ 13-21-102(1)(b); 13-21-203(3)(b).  "Where the defendant is conscious of

his conduct and the existing conditions and knew or should have known that injury

---

[3] In the final paragraphs of his Response, Plaintiff raises a second argument for exemplary damages, alleging that Ms. Black committed fraud by fabricating the statements in her incident report that she had told Mr. Castillo to fix the clip and that he subsequently admitted the clip was incompatible with the lift.  (ECF No. 75 at 19-20.)  Plaintiff cites no evidence to support an inference of fraud.  Regardless, the Court need not resolve this argument at this stage, because the Court finds that Plaintiff presents sufficient evidence of Mr. Castillo's willful and wanton conduct to defeat summary judgment.

would result, the statutory requirements of Section 13-21-102 are met." *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005); *see also Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) ("Conduct is willful and wanton if it is a dangerous course of action that is consciously chosen with knowledge of facts, which to a reasonable mind creates a strong probability that injury to others will result.") (citation and internal quotations omitted).  An award of exemplary damages requires that an elevated evidentiary standard be met, and such an award is only permitted where "the party asserting the claim proves beyond a reasonable doubt the commission of a wrong under the circumstances set forth in Section 13-21-102."  Colo. Rev. Stat. § 13-25-127(2); *see also Coors*, 112 P.3d at 65.

In their Motion, Defendants argue that they are not liable for exemplary damages because there is no evidence that Mr. Castillo acted willfully and wantonly.  (ECF No. 74 at 10.)   Specifically, Defendants contend that Plaintiff has failed to present evidence showing that Mr. Castillo installed an incompatible safety clip on the lift used to move Mrs. Wake, that he did so knowingly, or that his actions caused her injuries and death.  (*Id.* at 11-16.)

In response, Plaintiff argues that the evidence shows that Mr. Castillo knew the importance of the safety clip to lift safety, that Ms. Black told him to replace the safety clip on the relevant lift prior to the incident resulting in her death, that he knowingly used the wrong safety clip on the lift, and that the lack of the correct safety clip contributed to Mrs. Wake's death.  (ECF No. 75 at 19.)

Plaintiff's argument is supported primarily by the Incident Report dated October 11 and 12, 2009, and the Disciplinary Action Record against Mr. Castillo dated October

6

10, 2009.  (ECF Nos. 75-7, 75-8.)  The Incident Report states that after an investigation of the incident involving Mrs. Wake, "it was discovered that the incorrect safety clip had been placed on the end of the sling bar" of the lift used in the incident, and that "[t]he Maintenance Director confirmed that he had been asked to replace the clip a few weeks prior and had taken the clips from another incompatible lift and placed them on the lift at issue."  (ECF No. 75-8 at 3.)  Both documents indicate that this issue "contributed" to Mrs. Wake's serious injuries in the incident that resulted in her death.  (ECF Nos. 75-7, 75-8.)  Although Mr. Castillo testified to having no memory of most of the factual details of the incident, he agreed that having the correct safety clip on a lift was a "life or death" matter, and that in general, he "would use the proper clip for the proper machine."  (*See* Castillo Dep. 18, 30.)

Defendants argue that this evidence is insufficient for a reasonable jury to conclude, beyond a reasonable doubt, that Mr. Castillo consciously performed an act leading to Mrs. Wake's death that he knew or should have known was likely to cause injury.  (ECF No. 74 at 10-16.)  Defendants point to Ms. Black's testimony that she is not an expert or experienced in using lifts, she did not know the clips were incompatible, and that she used that term only because Mr. Castillo told her he had taken the clip off of a different lift.  (Black Dep. 55, 63-64.)  Because Ms. Black simply assumed the clip was incompatible, Defendants argue that the Incident Report is insufficient evidence to support such a finding.  Defendants further argue that there is no evidence that Mr. Castillo had an "evil intent or wrongful motive," or that he acted "purposefully or deliberately."  (ECF No. 74 at 15.)  Finally, Defendants contend that there is no evidence that Mr. Castillo's alleged installation of an incompatible clip caused Mrs.

Wake's injuries and contributed to her death.  (*Id.* at 16.)

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is a genuine dispute of fact with regard to whether Mr. Castillo's actions were willful and wanton.  A reasonable jury could disbelieve Ms. Black's *post hoc* explanations, and instead rely on the documents drafted within a few days of the incident to conclude, beyond a reasonable doubt, that Mr. Castillo was asked to replace the clip and, though he understood the safety risk, used a different clip that did not function properly.  The evidence in the record would permit a reasonable jury to conclude, beyond a reasonable doubt, that Mr. Castillo acted purposefully in replacing the clip, recklessly in using a clip for a different lift, and in disregard of a known serious risk to safety.  This conclusion would be sufficient to demonstrate willful and wanton conduct such that no malicious intent is required to trigger liability for exemplary damages.  *See* Colo. Rev. Stat. § 13-21-102(1)(b); *Coors*, 112 P.3d at 66; *Stamp*, 172 P.3d at 449.

With regard to causation, the Court finds sufficient evidence for a reasonable jury to conclude, beyond a reasonable doubt, that Mr. Castillo's actions in replacing the clip were a contributing cause of the incident.  Ms. Black testified that "[n]obody knows for sure exactly what happened with the clip," but then agreed that the Incident Report listed the clip as a causal factor because the sling strap came off the bar, and the safety clip—which is designed to prevent that from happening—was found bent under Mrs. Wake's bed after the incident.  (Black Dep. 46-48.)  Defendants protest that "it is just as likely that the clip Mr. Castillo replaced is not the clip that came off the safety bar", and that any conclusion otherwise is "speculation and conjecture".  (ECF No. 74 at

8

16.)  This argument is itself purely speculative.  While there is no evidence of any reason for the other clip to fail, there is evidence indicating that the clip Mr. Castillo replaced failed, including the Incident Report, which lists the incompatible safety clip as a cause of the incident, and Ms. Black's testimony, in which she states that she made the same deduction at the time.  Viewing such evidence in the light most favorable to the Plaintiff, the Court finds it sufficient to reasonably establish that the safety clip was a contributing cause of the incident.

From this evidence, a reasonable jury could conclude, beyond a reasonable doubt, that Mr. Castillo purposefully replaced the clip with an incompatible one, and that he knew or should have known that such reckless action would have a strong probability of resulting in injury.  *See Coors*, 112 P.3d at 66; *Stamp*, 172 P.3d at 449.  Such action would constitute willful and wanton conduct, triggering liability for exemplary damages.  *Id.*  Accordingly, summary judgment cannot be granted on this basis.

## B.    Managerial Employee

Defendants next contend that regardless of Mr. Castillo's conduct, they are not liable for exemplary damages because Mr. Castillo was not a managerial employee.  (ECF No. 74 at 16-20.)

A corporate defendant is liable for exemplary damages only where an agent of the corporation employed in a managerial capacity engaged in willful and wanton conduct in the scope of employment.  *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1174 (10th Cir. 1981) (citing *Holland Furnace Co. v.*

*Robson*, 402 P.2d 628, 631 (Colo. 1965)). Where an employee was acting in a managerial capacity, the corporation need not actually authorize or ratify the willful and wanton act to be liable for exemplary damages. *Jacobs v. Commonwealth Highland Theaters, Inc.*, 738 P.2d 6, 12-13 (Colo. App. 1986) (citing Restatement (Second) of Agency § 217C (1958)). To determine whether an agent was acting in a managerial capacity, the Tenth Circuit has found relevant "the stature and authority of the agent to exercise control, discretion and independent judgment over a certain area of a business with some power to set policy for the company." *Fitzgerald v. Mountain States Tel. & Tel. Co.*, 68 F.3d 1257, 1263 (10th Cir. 1995) (finding a "training instructor" was not a manager, despite her testimony that she was, because she lacked the "typical discretion of a manager, such as the power to make independent decisions regarding personnel matters or determine policy.").

In support of their argument that Mr. Castillo was not a managerial employee, Defendants supplemented their Motion with a citation to a recently released Supreme Court opinion in *Vance v. Ball State University*, 133 S. Ct. 2434 (2013). (ECF No. 90.) In *Vance*, the Supreme Court resolved a circuit split regarding an employer's liability under Title VII for an employee's actions, rejecting an EEOC guidance document that focused the inquiry on the employee's "ability to exercise significant direction over another's daily work." 133 S.Ct. at 2443. Instead, the *Vance* Court held that to impose Title VII liability on an employer, the employee must have the authority "to take tangible employment actions . . . *i.e.*, to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits.'"  *Id.* (quoting

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also McCafferty v.*

*Preiss Enters., Inc.*, 2013 WL 4055480, at *3 (10th Cir. Aug. 13, 2013) (quoting *Vance*).

Defendants point to Mr. Castillo's and Ms. Black's deposition testimony regarding

limitations on Mr. Castillo's responsibilities and authority, arguing that such evidence

shows there is no genuine dispute of material fact that Mr. Castillo was not a

managerial employee.  (ECF No. 74 at 6-7.)  Mr. Castillo testified that he had no ability

to enter into contracts, hire subordinates on his own, or create new rules and policies

for the facility.  (Castillo Dep. 62-63.)  Ms. Black similarly testified that Mr. Castillo was a

"low-level supervisor" without the authority to create management policies or approve

time off requests, and that she gave final approval for hiring decisions regarding his

subordinates.  (Black Dep. 61-62.)

In response, Plaintiff points to contrary language in Mr. Castillo's job description

("Job Description").  (ECF No. 75 at 3-4; *see* ECF Nos. 74-7, 75-1.)  The Job

Description, signed by both Mr. Castillo and Ms. Black, stated that the Maintenance

Supervisor "[m]anages maintenance personnel", "recruits, hires, provides

orientation/training, and retains a sufficient number of qualified staff" to support facility

maintenance, "[o]versees safety program and preventative maintenance", "[a]pplies

building and safety codes", and "[s]upervises the maintenance and physical plant staff

and others for whom they are administratively responsible."  (ECF Nos. 74-7, 75-1.)

Further, Ms. Black testified that Mr. Castillo attended daily meetings of department

managers, as the "department head for maintenance", and that he had supervisory

responsibility of one subordinate maintenance technician.  (Black Dep. 22-23.)  She

11

also confirmed that part of Mr. Castillo's job included recruitment, hiring, orientation, and training for that subordinate.  (*Id.* at 23-24.)

This evidence shows that the scope of Mr. Castillo's managerial status is in genuine dispute.  While Mr. Castillo himself now disclaims all managerial authority, and there is no evidence that he had the ability to set facility policy or rules, his written job description—and Ms. Black's testimony—confirms his ability to recruit, hire, and manage subordinate maintenance personnel, as well as oversee the safety program and apply building and safety codes.  Furthermore, in Mr. Castillo's deposition, taken some three years after the incident, he states that he now has a memory impairment, diminishing his credibility.  (Castillo Dep. 19.)  While it is a close question, in viewing the evidence in the light most favorable to the Plaintiff, the Court finds that a reasonable jury could rely on the Job Description to conclude that Mr. Castillo had the authority to take "tangible employment actions" (albeit only with respect to one subordinate employee), and discredit Mr. Castillo's testimony to the contrary.  *See Vance*, 133 S.Ct. at 2443.  Such authority with regard to personnel decisions, even solely within the maintenance department, would be sufficient to impose liability for exemplary damages on his employers for any willful and wanton conduct.  *See Fitzgerald*, 68 F.3d at 1263; *Holland Furnace*, 402 P.2d at 631.  Accordingly, the Court rejects Defendants' argument that Plaintiff's exemplary damages claim should be dismissed because there is no evidence that Mr. Castillo was a managerial employee.

A reasonable jury could consider the same evidence in support of a finding that Mr. Castillo was employed by SavaSeniorCare Administrative Services, as its name—not Centennial's—appears prominently on the Job Description.  (ECF Nos. 74-7,

75-1.)  Defendants argue that the testimony of Wynn Sims, the corporate secretary for

Centennial, demonstrated that Mr. Castillo was employed by Centennial, and that

SavaSeniorCare Administrative Services merely prepared the Job Description on

Centennial's behalf.  (ECF No. 76 at 2, 10.)  However, when asked why the Job

Description was on SavaSeniorCare Administrative Services letterhead, Ms. Sims in fact

testified that she "d[id]n't know why it is," but that she "believe[d]" that it was prepared

pursuant to the "back office" agreement between Centennial and SavaSeniorCare

Administrative Services.  (Deposition of Wynn Sims (ECF No. 74-1) at 18.)  Centennial's

name does not appear on the Job Description.  (ECF Nos. 74-7, 75-1.)

From the plain language in the Job Description and Ms. Sims' lack of certainty in

her testimony, a reasonable jury could conclude that Mr. Castillo was employed by

SavaSeniorCare Administrative Services in addition to, or instead of, Centennial.

SavaSeniorCare Administrative Services would then be liable under Section 13-21-

203(3)(a) for any willful and wanton conduct by Mr. Castillo that resulted in Mrs. Wake's

death.  Accordingly, summary judgment of Plaintiff's exemplary damages claim based

on Mr. Castillo's employment status must be denied with respect to both Defendants.

## IV.  CONCLUSION

In accordance with the foregoing, it is therefore ORDERED that Defendants'

Motion for Partial Summary Judgment on Plaintiff's Request for Punitive Damages is

DENIED.

Dated this 10th day of October, 2013.

BY THE COURT:

William J. Martinez
United States District Judge